UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| FEDERAL TRADE COMMISSION, et al., | * | CASE NO.: 1:16-mc-91068 |
| | * | |
| Plaintiffs, | * | |
| | * | UNITED STATES DISTRICT COURT |
| v. | * | DISTRICT OF COLUMBIA |
| | * | |
| STAPLES, INC. and OFFICE DEPOT, INC., | * | Case No. 1:15-cv-02115 (EGS) |
| | * | |
| Defendants. | * | |
| | * | **DISCOVERY MATTER** |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF OFFICE DEPOT, INC.'S MOTION
TO COMPEL DISCOVERY FROM
NON-PARTY CRA INTERNATIONAL, INC.**

Office Depot, Inc. ("Office Depot") respectfully moves to enforce its subpoena dated February 3, 2016 ("Subpoena") seeking the production of documents, data, and a deposition from non-party CRA International, Inc. ("CRA") related to an action brought by the Federal Trade Commission ("FTC") to block an acquisition of Office Depot by Staples, Inc. ("Staples"). The FTC's antitrust complaint alleges that the merger will allow the new entity to raise the prices it charges for certain office supplies to "large B-to-B customers in the United States" and that only Staples and Office Depot are capable of meeting the office supply needs of large businesses.

On February 4, 2014, Office Depot properly served a subpoena on CRA seeking documents and information relevant to the parties' claims and defenses in this proceeding. Despite Office Depot's offer to provide an extension of time to respond and narrow the scope of the Subpoena to reduce any burden on CRA, CRA served boilerplate objections on February 16 without producing any documents.

After receiving the objections, Office Depot repeatedly contacted CRA by phone and email regarding the scope of the Subpoena and deadline for producing responsive documents and information. CRA responded with delay tactics. On February 24, Office Depot again narrowed the scope of the Subpoena, extended the time to respond, and offered to discuss the requests.

Office Depot and CRA met and conferred by telephone on the afternoon of February 25 regarding CRA's objections and the scope of the Subpoena. As a result of that conference, Office Depot agreed to provide CRA until March 2 to decide if it would comply with the Subpoena. Having heard nothing of substance from CRA, on March 4, Office Depot informed CRA that it would file a motion to compel. Office Depot has no choice but to file this motion because of (i) CRA's failure to produce any documents or provide any responsive information, (ii) CRA's apparent lack of effort over the past month to determine if responsive documents even exist, (iii) Office Depot's inability to procure the requested information from other sources, and (iv) the impending hearing before the District Court in the District of Columbia, which is set to begin in less than three weeks.

Through this motion to compel, Office Depot seeks the production of documents, data, and a deposition regarding (1) CRA's contracts with office supply vendors; (2) CRA's materials related to requests for proposals; (3) CRA's documentation for overall procurement spending by year, location, and product category on all office supplies; and (4) CRA's spending on office supplies outside of its contracts with office supply vendors. This narrowly tailored information is highly relevant to rebutting the FTC's claim that large companies with nationwide office supply needs, like CRA, can only be served by Office Depot and Staples. Without such discovery from CRA, Office Depot's ability to rebut the FTC's allegations will be negatively impacted. Moreover, the discovery sought from CRA is not available from any other source because it is particular to CRA and involves CRA's internal records, policies, and procedures.

Finally, CRA is a highly sophisticated multi-million dollar corporation that is routinely involved in complex litigation and is undoubtedly equipped to respond to the Subpoena. CRA has set forth no special factor that renders it exempt from producing documents and providing information under Rule 45. It simply does not want to do so.

For the reasons set forth herein, the Court should grant Office Depot's motion. Given the imminent deadlines in the underlying litigation, Office Depot respectfully requests an expedited briefing schedule on this Motion to Compel.

## BACKGROUND

*The Underlying Litigation*

This motion arises out of the FTC's effort to enjoin the acquisition of Office Depot by Staples in the United States District Court for the District of Columbia, Case No. 1:15-cv-02115-EGS (the "Underlying Litigation").[1] On December 7, 2015, the FTC filed its Motion for Preliminary Injunction against Staples and Office Depot. (Declaration of Brian Spahn ("Spahn Decl.") ¶ 1, Ex. A.)

On December 24, 2015, the Court granted the parties' Motion for Entry of Stipulated Case Management and Scheduling Order ("CMO") setting an extremely expedited discovery schedule. The court set February 12, 2016, as the deadline for completing fact discovery, but noted that the "parties agree to work in good faith to complete depositions . . . by February 12, 2016, or as soon as practical thereafter." (Spahn Decl. ¶ 2, Ex. B.) In addition to the February 12 close of discovery, the CMO provides that any third-party "deposition date must be at least seven days after the original return date for the document subpoena." (Id. at 8.) And the "parties may not serve a deposition notice with fewer than seven days' notice for the deposition." (Id.)

---

[1] The Commonwealth of Pennsylvania and the District of Columbia are also plaintiffs in the Underlying Litigation.

*CRA's Refusal to Comply*

On February 4, 2016, Office Depot properly served the Subpoena on CRA seeking documents and information relevant to the parties' claims and defenses in the Underlying Litigation. (Id. ¶¶ 3–4, Exs. C, D.) Following service, Office Depot consulted via telephone and email on numerous occasions with in-house counsel for CRA regarding the Subpoena and the documents and information sought, but CRA has refused to reach any agreement. (Id. ¶¶ 5–28, Exs. E–Z.) Despite the fact that Office Depot substantially narrowed the scope of the Subpoena and provided CRA with weeks of additional time to comply, CRA has produced no documents and provided no information.

On February 4, 2016, Office Depot reached out to CRA through Mr. Jonathan Yellin, CRA's General Counsel, by email and stated its willingness to work with CRA to lessen any burden caused by the Subpoena. (Id. ¶ 5, Ex. E.) Mr. Yellin did not respond. (Id. ¶ 5.) Office Depot emailed Mr. Yellin again on February 5. (Id. ¶ 6, Ex. F.) Mr. Yellin did not respond. (Id. ¶ 6.) Office Depot emailed Mr. Yellin a third time on February 9, again asking to discuss the Subpoena. (Id. ¶ 7, Ex. G.) Mr. Yellin finally responded on February 9 via email and offered to discuss the Subpoena on February 12, eight days after the Subpoena was served and just one business day prior to the date of compliance. (Id. ¶ 8, Ex. H.)

Office Depot responded within minutes of Mr. Yellin's February 9 email, agreeing to discuss the Subpoena on Friday, February 12. (Id. ¶ 9, Ex. I.) However, given the highly expedited discovery schedule in this case, Office Depot asked if it would be possible to speak sooner. (Id.) Office Depot followed up the next morning, reiterating its request to speak as soon as possible because the Subpoena was served on February 4 with a 10-day return date. (Id. ¶ 10, Ex. J.) Mr. Yellin responded simply: "[A]s I stated I can talk Friday. I understand the rules. Will 1000 am work?" (Id. ¶ 11, Ex. K.)

4

On February 12, Office Depot called Mr. Yellin.  (Id. ¶ 12.)  During that call, Office Depot offered to narrow the scope of the Subpoena to lessen the burden on CRA.  (Id.)  Office Depot also offered to allow CRA to execute a simple declaration in lieu of a production of documents or deposition.  (Id.)  For his part, Mr. Yellin stated that he had not spoken with or contacted anyone at CRA knowledgeable about CRA's office products procurement practices or the information requested in the Subpoena.  (Id.)

On February 16, 2016, Office Depot arranged a follow up phone call with Mr. Yellin to discuss the already limited scope of and extended compliance date for the Subpoena.  (Id. ¶ 13–14, Exs. L, M.)  Prior to this call, Mr. Yellin emailed the following boilerplate objections to the Subpoena without producing documents:

1. The subpoena is unduly burdensome and oppressive until [sic] Rule 45(c)(1) in that the time frame for the scope of production is significant.
2. The subpoena is unduly burdensome and oppressive under Rule 45(c)(1) because it purports to seek production of documents in less than the 30-day period for partiers [sic] under Federal Rule of Civil Procedure 34(b)(2)(A). Non-parties are entitled to more, not less, protection and consideration than other parties.
3. The subpoena is overbroad, unduly burdensome and oppressive to the extent that it required the production of documents and redundant discovery from a non-party which should be readily obtainable from the parties or from sources other than CRA more conveniently and at less expense.
4. The subpoena is unduly burdensome and oppressive in that it required production of electronically stored information within an unreasonable period in a manner and form that will impose unreasonable costs [sic] objectionable burdens upon a non-party under Rule 45(c)(2)(B).
5. The subpoena is unduly burdensome and oppressive in that it requires the production of electronic information that is not reasonably accessible under Rule 45(d)(1)(D) and will create undue burden or cost.
6. Upon information and belief, the subpoena seeks discovery of materials in violation of the discovery deadline pertaining to fact witness discovery in the above referenced matter.

(Id. ¶ 15, Exs. N, O.)  Mr. Yellin identified no specific objections to any requests in the Subpoena.  During the call in the late afternoon on February 16, Mr. Yellin revealed that he *still*

5

had not spoken with anyone at CRA knowledgeable about CRA's office products procurement practices or the information requested in the Subpoena, despite the fact that he had represented in his objections that it would be "unduly burdensome and oppressive" to provide documents and information and that the documents and information were not reasonably accessible.  (Id. ¶ 16.) He advised that he may not be able to do so until after an "earnings call" on February 19.  (Id.)

Office Depot followed up yet again on February 18 to check on the status of Mr. Yellin's inquiries regarding the Subpoena.  (Id. ¶ 17, Ex. P.)  This email reiterated the substantial narrowing of the Subpoena to include just "CRA's annual office product spend; the amount and/or percentage of off-contract spend; and information related to CRA's RFP process."  (Id.) Mr. Yellin responded that "CRA has not agreed to provide anything as set forth in its objection. As a courtesy, I will inquire of your issues, but that is with a full reservation of rights."  (Id. ¶ 18, Ex. Q.)  In response, Office Depot requested that Mr. Yellin provide "date certain (no later than COB Tuesday, February 21) by which you'll be in a position to inform me whether CRA will be making a document production and/or will be willing to sign a declaration in lieu of a production."  (Id. ¶ 19, Ex. R.)  Mr. Yellin did not respond.  (Id. ¶ 19.)

Office Depot followed up with Mr. Yellin to "discuss the status of [Mr. Yellin's] inquiries" on the morning of February 23.  (Id. ¶ 20, Ex. S.)  Mr. Yellin did not respond. (Id. ¶ 20.)  Office Depot emailed Mr. Yellin yet again in the early evening of February 23:

> Given your lack of response to my last two emails, along with CRA's refusal to produce documents responsive to the subpoena Office Depot served on CRA on February 4, 2016, Office Depot intends to move to compel discovery from CRA. Please consider this email Office Depot's attempt to meet and confer regarding its Motion to Compel.  Unless I hear otherwise by 5pmEST tomorrow, I will assume CRA will oppose the motion.

(Id. ¶ 21, Ex. T.)  Mr. Yellin replied within minutes, claiming (incorrectly) that he had replied to Office Depot's most recent emails and stating that CRA's "10k is filed in the next week or so I

6

cannot get input on your inquiries." (Id. ¶ 22, Ex. U.)  As a final effort to reach an amicable resolution, Office Depot offered CRA yet another extension, to March 4, if CRA would commit to provide the following documents by that date:

> (1) documents sufficient to show its annual spend on Relevant Products (as defined in the subpoena) for years 2012 through 2015, and the breakdown of that spend by location and supplier (e.g., Staples, Office Depot, WB Mason, Amazon, HiTouch (aka MyOfficeProducts), etc.); and (2) documents related to CRA's most recent RFP process (i.e., the RFP, responses to the RFP, and any internal analyses of the responses).

(Id. ¶ 23, Ex. V.)  The parties met and conferred by telephone on February 25 regarding CRA's objections and the further-narrowed Subpoena and the extension to March 4—29 days after the Subpoena was served.  (Id. ¶ 24.)  During the call, Mr. Yellin represented that he would inform Office Depot the day of or the day after CRA filed its Form 10k, which he expected would be February 29 or March 1, whether the documents sought in the Subpoena were available and the timeline necessary to produce the information.  (Id.)  Office Depot confirmed this agreement via email on the same day.  (Id. ¶ 25, Ex. W.)  Mr. Yellin agreed to "catch up with [CRA's administrative] folks and see what information they can provide."  (Id. ¶ 26, Ex. X.)  He again represented that he had "no idea of the actual man hours and difficulty" that would be required to provide responsive information and documents to the narrowed Subpoena.  (Id.)

The parties reached a final impasse when, on March 1, Mr. Yellin sent an email stating that CRA had not filed the Form 10k and he would "let you know once it is filed this week."  (Id. ¶ 27, Ex. Y.)  In response, Office Depot informed Mr. Yellin on March 4 that given the month-long delay and his inability to make any inquiry at CRA regarding responsive information and documents—even with the narrowed Subpoena and several extensions—Office Depot had no choice but to file a motion to compel.  (Id. ¶ , Ex. Z.)

*Responses by Other Third Parties*

CRA is not the only third-party from whom Office Depot has sought documents and information in the Underlying Litigation. Hundreds of third party subpoenas have been served in the Underlying Litigation on a variety of entities, including large corporations and government entities. In each instance, including here, Office Depot has worked in good faith to narrow its subpoenas where relevant and lessen any burden on third parties. Indeed, to date, the vast majority of third parties have produced documents or provided information cooperatively. CRA, for whatever reason, has not only failed to produce a single document, it has refused to engage in a serious discussion about its obligations. Instead, CRA has time and again delayed even attempting to determine whether it has responsive documents at all.

## **LEGAL STANDARD**

A party has a right to subpoena any person to produce relevant documents for inspection and copying. *See* Fed. R. Civ. P. 45(a). Because courts apply the standards of Rule 26 to subpoena requests under Rule 45, the scope of permissible discovery under Rule 45 is broad. *Rockstar Consortium US LP*, No. 14-91322-FDS, 2015 WL 5972422, at *4 (D. Mass. Oct. 14, 2015). Pursuant to Rule 26(b)(1), as revised and effective December 1, 2015, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that Rule 26(b)(1) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case").

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a [non-party] subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The party resisting discovery bears the burden of proof. *In re New*

*England Compounding Pharmacy, Inc. Products Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013).  This burden is not met by "a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Id.* (quoting 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2459 (2d ed. 1995)); *see also Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 12–cv–7493, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012) ("To demonstrate undue burden, the movant must provide 'affirmative and compelling proof.' "); *Biological Processors of Alabama, Inc. v. North Georgia Environmental Servs., Inc.*, No. 09–3673, 2009 WL 1663102, at *1 (E.D. La. June 11, 2009) ("When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity, 'and assertions of a burden without specific estimates of staff hours needed to comply' are typically rejected.").  A "conclusory assertion of burdensomeness is entitled to no weight whatsoever."  *Jackson v. Edwards*, No. 99 CIV.0982, 2000 WL 782947, at *2 (S.D.N.Y. June 16, 2000).

Courts consider a variety of facts in determining whether a subpoena imposes an undue burden:

> (1) the relevance of the information requested; (2) the need of the [non]-party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed; and (7) the expense and inconvenience to the non-party.

*LSI Corp. v. Vizio, Inc.*, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012); *see also In re New Eng. Compounding Pharm., Inc.*, 2013 WL 6058483, at *6.  No single factor is dispositive.  *Rockstar Consortium*, 2015 WL 5972422, at *4 (citing *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013)).  The determination of undue burden and reasonableness is subject to the discretion of the court.  *See United States v. Concemi*, 957 F.2d 942, 949 (1st Cir. 1992).

9

Additionally, courts specifically recognize the importance and added value of non-party discovery in the antitrust context. *See*, *e.g.*, *In re Mushroom Direct Purchaser Antitrust Litigation*, 2012 WL 298480, at *4 (E.D. Pa. 2012) (recognizing the "general policy of allowing liberal discovery in antitrust cases"); *Columbus Drywall and Insulation, Inc. v. Masco Corp.*, No. 2:06-MC-0034, 2006 WL 2871834, at *2 (S.D. Ohio Sept. 25, 2006) (declining to quash third party subpoena in an antitrust matter, recognizing that "information from a non-party participant in the market may, from a tactical standpoint, present advantages in the litigation not easily realized from parties or experts").

Defiance of a subpoena is equivalent to defiance of a court order, even where the subpoena was issued by an attorney. *See S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010).

## ARGUMENT

### I. THE DISCOVERY SOUGHT IS HIGHLY RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES.

Although CRA's flat refusal to produce documents in response to the Subpoena alone supports the Court granting this motion, the indisputable facts confirm that the motion should be granted. Office Depot is seeking documents and information from CRA that can be grouped into the following four categories: (1) CRA's contracts with office supply vendors; (2) CRA's request for proposal materials; (3) CRA's documentation for overall procurement spending by year, location, and product category on all office supplies; and (4) Off-Contract spending tracking for office supplies. As explained below, each of these categories of documents and information are highly relevant to the issues in dispute in the Underlying Litigation.

### a.     Discovery Regarding the Contracts with Office Supply Vendors

The central premise of the FTC's complaint is that if the proposed transaction is consummated, the combined entity will be able to raise the prices it charges for certain "consumable" office supplies to "large B-to-B customers in the United States." The FTC further alleges that only Staples and Office Depot are capable of meeting the office supply needs of large businesses like CRA with offices throughout the United States. The discovery sought by Office Depot regarding CRA's office supply vendors is designed to obtain documents relevant to this issue, *i.e.*, whether CRA's office supply needs already are or could be met by other vendors.

Moreover, CRA occupies a unique position in the Underlying Litigation. CRA is the consultant supporting the FTC's expert, who claims that large B-to-B customers will be unable to turn to alternatives if the merger is approved. The facts surrounding CRA's purchases of office supplies are therefore of even greater relevance to whether the FTC's claims are accurate. CRA's unique position makes the discovery sought by Office Depot not duplicative. Given that the FTC's expert is scheduled to be deposed on or about March 15 and CRA has refused to provide any information to date, it is critical that CRA be ordered to comply with the Subpoena on an expedited basis.

The discovery Office Depot seeks from CRA focuses on the very issue at the heart of the FTC's case and is necessary to help rebut the FTC's claims regarding decreased competition.

### b.     Discovery Regarding the Request for Proposal Materials

Similarly, the FTC's allegations of decreased competition, which focus heavily on Requests for Proposal ("RFPs"), may be disproven by the methods used by large businesses to negotiate pricing and other contractual terms with office supply vendors. CRA, as a large business and significant consumer of office supplies, secures competitive prices, maintains competitive rates, and negotiates with office supply vendors. Discovery regarding whether CRA

engages in formal RFPs for office supplies and how CRA selects an office supplies vendor, negotiates the contracts for those vendors, and ultimately purchases office supplies is discovery that Office Depot needs to fairly defend against the FTC's allegations in the underlying case. This information goes directly to the FTC's claims that large businesses cannot obtain competitive pricing without Staples and Office Depot in the marketplace. The discovery sought will provide evidence regarding how large businesses with locations across the country like CRA *actually* negotiate in the marketplace. Only with this information can the court in the Underlying Litigation possible assess whether the acquisition will result in decreased competition and harm to large B-to-B customers.

### c. Discovery Regarding Overall Procurement Spending by Year, by Location, and by Product Category

The FTC alleges in the complaint that the proposed transaction will combine the two leading suppliers of "consumable office supplies" to "large B-to-B customers." It also claims if the proposed merger goes forward, competition will be harmed because large B-to-B customers will have no viable alternative to the merged entity for consumable office supplies. To determine whether CRA fits within the FTC's claimed market, and whether the market the FTC advocates is appropriate at all, Office Depot needs basic information about how much, where, and what type of office supply spending CRA makes on an annual basis. Office Depot specifically limited the request to "summary" documents to avoid any undue burden. Without this type of information about the very customers that the FTC claims to seek to protect, Office Depot's defense is severely hamstrung.

### d. Discovery Regarding Off-Contract Spending

The discovery Office Depot seeks information from CRA regarding its spending on office supplies outside of its contract with Staples. incorporates "off-contract" spending. The

amount of "off-contract" spending is critical to the claims and defenses in the Underlying Litigation. Off-contract spending is a simple concept. Customers, like CRA, even when they have a contract with one or more office supply vendors, often do not limit their office supply purchases to that contract. Indeed, customers frequently use several vendors for their office supply needs for any number of reasons. By purchasing outside of an office supply contract, CRA demonstrates another avenue it has to ensure competitive pricing that is directly relevant to the Underlying Litigation that is premised on the claim that there is no competitive pressure in the market outside of Staples and Office Depot.

## II. THE DISCOVERY SOUGHT IS APPROPRIATE AND PROPORTIONATE TO THE NEEDS OF THIS CASE.

In evaluating whether discovery should be compelled under Rule 45, Rule 26 instructs courts to consider the discovery's proportionality to the needs of the case, and specifically the following six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Every one of these factors weighs in favor of compelling CRA to produce the requested discovery.

### a. The Issues at Stake and Amounts in Controversy, Weigh Strongly in Favor of Compelling the Requested Discovery.

Factors one and two both weigh heavily in favor of enforcement of the Subpoena. The transaction at stake is the proposed $6.3 billion acquisition of Office Depot by Staples. Office Depot and Staples have dedicated enormous amounts of time and money for this proposed transaction. Should the FTC prevail before the District Court in the District of Columbia, that transaction will not take place. These facts alone demonstrate that the issues at stake and amounts in controversy weight strongly in favor of compelling the requested discovery.

Moreover, were the FTC to prevail, and the proposed transaction blocked, consumers throughout the United States would be harmed as the transaction is expected to yield billions of dollars in efficiencies. These costs savings will ultimately be passed on to consumers. These potentially lost savings to consumers reinforce that the stakes at issue and amounts in controversy are significant. Accordingly, these first two factors weigh heavily in favor of compelling the sought discovery.

> b. **The Parties' Relative Access to the Discovery Sought Weighs in Favor of Granting this Discovery.**

The third proportionality factor also weighs heavily in favor of granting the motion. The overwhelming majority of the information that Office Depot is seeking from CRA is in the exclusive control of CRA. For this information, there is simply no reasonable alternative source other than from CRA. Thus, the parties' relative access to the requested discovery also weighs heavily in favor of granting this motion.

> c. **CRA is a Large, Sophisticated Entity with Substantial Resources.**

The fourth factor focuses on the resources of the subpoenaed entity. In this respect, the Court should consider that CRA is a large, sophisticated corporation with offices throughout the United States that is frequently involved in complex litigation, has a legal department, and is equipped to respond to the Subpoena and produce any responsive documents. As a "leading global consulting firm that offers economic, financial, and strategic expertise . . . around the world," CRA has "proven skills in complex cases and exceptional strength in analytics." *About CRA*, CHARLES RIVER ASSOCIATES, http://www.charlesriverassociates.com/about (last visited February 26, 2016). Moreover, CRA is being compensated substantially for its involvement in this case through its support of the FTC's economic expert.

### d.  Discovery from CRA is Necessary to Resolve Issues in the Litigation and the Expense of Such Discovery Does Not Outweigh its Likely Benefit.

The fifth and sixth factors focus on the importance of the discovery from the subpoenaed entity.  As noted above, CRA's support of the FTC's expert makes them unique and the discovery sought by Office Depot of particular importance.  The Underlying Ligation centers on the effects of the proposed merger between Office Depot and Staples on competition in the market for office supplies.  CRA is a large, nation-wide consumer of office supplies.  It is precisely the type of customer that the FTC alleges will be harmed by the proposed acquisition.  The discovery from CRA, including its office supply contracts, procurement processes, total spending, and off-contract expenditures, will speak to the core issues in the Underlying Litigation.  This discovery will benefit the litigation by providing information on the effect of the proposed transaction on CRA, if any.  It will also benefit the Underlying Litigation by (1) debunking the FTC's definition of the "relevant product market"; and (2) providing information that demonstrates that the vigorous competition exists and will continue to exist if the proposed transaction goes forward.  Moreover, Office Depot limited the materials sought to a narrow and manageable set of requests and extended the time to produce the documents from 10 to 29 days.  A large company like CRA is well equipped to handle producing this limited set of documents in a timely fashion without undue burden.

Therefore, the discovery sought from CRA is relevant to resolving the issues in the litigation and the expense of such discovery from CRA concerning the proposed merger does not outweigh its likely benefit.  And, as it has already offered to do on multiple occasions with CRA, Office Depot stands ready to consider approaches that will help reduce the expense in complying with the subpoena.

### III. CRA'S OTHER STATED OBJECTIONS TO THE SUBPOENA ARE NOT GROUNDS TO QUASH THE SUBPOENA.

In addition to objecting to the subpoena as unduly burdensome and oppressive, CRA has objected to the Subpoena on two other grounds[2]: (1) the Subpoena is untimely because the original return date fell after the close of discovery and (2) the Subpoena did not provide more than 30 days to respond. (Spahn Decl. ¶ 15 Ex. O.) Both of these objections are flawed.

#### a. The Subpoena is Timely Because it was Served Before the Close of Fact Discovery.

In its February 16 objections, CRA objected that "[u]pon information and belief, the subpoena seeks discovery of materials in violation of the discovery deadline pertaining to fact witness discovery in the above referenced matter." (Id.) This objection is based on the flawed understanding that a Rule 45 Subpoena could somehow be untimely even when it is served before the close of discovery.

It is true that most district courts—including this one and the District of Columbia—treat a third-party subpoena pursuant to Rule 45 as subject to discovery deadlines. *E.g.*, *Alper v. U.S.*, 190 F.R.D. 281, 284 (D. Mass. 2000) ("In short, 'Rule 45 Subpoenas, which are intended to secure the pre-trial production of documents and things, are encompassed within the definition of 'discovery,' as enunciated in Rule

---

[2] CRA did not object to the Subpoena because it required a place of compliance that was more than 100 miles from CRA's headquarters in Boston. (Spahn. Decl. ¶ 15, Ex. O.) By failing to object at the time specified for compliance, CRA waived it. *Burroughs Corp. v. Dataware Sources, Inc.*, 7 Fed. R. Serv. 3d 346, 1987 WL 10190, at *1 (D. Mass. 1987) ("When objections are not filed within the time provided by the Rule, the objections are waived." (citing *Slauenwhite v. Bekum Maschinenfabriken GMBH*, 35 F. R. Serv. 2d 975 (D. Mass. 1983)); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived." (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)). Regardless, Office Depot is willing to offer the place of compliance to be the office of Cooke Clancy & Gruenthal LLP, which is just less than two miles from CRA's headquarters.

16

26(a)(5) and, therefore, are subject to the same time constraints that apply to all of the other methods of formal discovery.'" (quoting *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 443 (D. Minn. 1997)); *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) ("A subpoena pursuant to Federal Rule of Civil Procedure 45 to a third-party is not exempt from discovery deadlines in scheduling orders.") (citing *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 445 (D. Minn. 1997); *Rice v. United States*, 164 F.R.D. 556, 558 (N.D. Okl. 1995); *but see Multi-Tech Systems Inc. v. Hayes Microcomputer Products Inc.*, 800 F. Supp. 825, 854 (D. Minn. 1992) (concluding that the close of discovery does not prohibit a party from serving a subpoena duces tecum upon a non-party to the litigation). Thus, a subpoena *served* after the close of discovery may be objected to as untimely.

Here, the Subpoena was served well before the close of discovery. It was served on February 4, more than a week before the close of discovery. (Spahn Decl. ¶ 4, Ex. D.) It was the original return date—February 16—that fell one business day after the close of discovery. This does not render the Subpoena untimely. *E.g.*, *Liu v. Win Woo Trading, LLC*, No. 14-cv-02639-KAW, 2016 WL 661029 (N.D. Cal. Feb. 18, 2016). In *Liu*, the court rejected the argument that a subpoena is untimely when the date for performance falls after the close of discovery:

> Many courts have found that Rule 45 subpoenas sought after the discovery cut-off are improper attempts to obtain discovery beyond the discovery period." *nSight, Inc. v. PeopleSoft, Inc.*, 2006 WL 988807, at *3 (N.D. Cal. Apr. 13, 2006) (citing *Rice*, 164 F.R.D. at 557–59 (subpoenas duces tecum for particular records, issued to third parties after close of discovery, were quashed as improper attempt to engage in discovery after discovery cutoff)). These subpoenas, however, were served prior to the close of discovery. That performance would occur after the cut off does not render the subpoenas untimely.

*Id.* at *2; *see also Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 25 (D.D.C. 2005) (denying motion to quash subpoena served 27 days before the close of discovery that resulted in depositions scheduled for two days after the close of discovery). Moreover, the CMO in the Underlying Litigation—in recognition of the short window for fact discovery—anticipated that depositions may not be complete by February 12, instructing that "the parties agree to work in good faith to complete depositions . . . by February 12, 2016, or as soon as practical thereafter."

Although Office Depot has found no case addressing identical facts in this district, in *Bear Republic Brewing Co. v. Central City Brewing Co.*, the Court "summarily" rejected the defendants' argument that a subpoena of a non-party should be quashed because it was served *after* the closing of discovery:

> The first two can be dealt with summarily. Central City claims that the subpoenas should be quashed because they are untimely having been served after the close of discovery. The Court rejects this argument since it was only ten days before the close of discovery that Mr. Staples and his role in the case were disclosed. In such circumstances, the Court would relax the deadline so that discovery could be taken since it was represented that Mr. Staples might have discoverable information.

275 F.R.D. 43, 45 (D. Mass. 2011). Given the tight discovery schedule in the Underlying Litigation, there is no basis to conclude that the Subpoena is flawed. *Id.* at 45; *see also McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) ("Defendant correctly asserts that when a plaintiff, as here, is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied.") (citing *Arkwright Mutual Ins. v. National Union Fire*, 1995 WL 66405 (S.D.N.Y. 1995); *Four M Corp. v. Guiliano*, 1991 WL 44840 (S.D.N.Y. 1991); *Slomiak v. Bear Stearns*, 1985 WL 410 (S.D.N.Y.); *Leach v. Quality Health*

*Services*, 162 F.R.D. 40, 42 (E.D. Pa. 1995); *Kimberly–Clark Corp. v. Baxter Healthcare*, 1993 WL 524376 (N.D. Ill. 1993)). Moreover, the Court in the Underlying Litigation has already granted motions to compel document production and out-of-time depositions in this matter. (Spahn Decl. ¶ 29, Ex. AA.)

### b. Rule 45 Requires Only a "Reasonable Time to Comply" with the Subpoena, Not at least 30 Days.

CRA also objected to the Subpoena because it provided "less than the 30-day period for partiers [*sic*] under Federal Rule of Civil Procedure 34(b)(2)(A). Non-parties are entitled to more, not less, protection and consideration than other parties." (Spahn Decl. ¶ 15, Ex. O.) There is no basis in Rule 45 or any case law for CRA's objection.

A Rule 45 subpoena must allow "reasonable time to comply." Fed. R. Civ. P. 45(c)(3)(A)(i). Office Depot is aware of no case that holds that a "reasonable time" to respond pursuant to Rule 45 must be greater than 30 days. To the contrary, "many courts have found fourteen days from the date of service as presumptively reasonable." *In re New England Compounding Pharmacy, Inc. Products Liab. Litig.*, 2013 WL 6058483, at *6; *McClendon v. Telohio Credit Union, Inc.*, No. 2:05–cv–1160, 2006 WL 2380601, at *2 (S.D. Ohio Aug. 14, 2006) (14 days presumptively reasonable)); *see also In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. MISC 08–347(ARR)(MDG), 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010) (collecting cases).

Here, the Subpoena served on February 4 provided 10 days to respond, which fell on the next business day after February 14, i.e., February 16, pursuant to Rule 6(a)(1). (Spahn Decl. ¶ 4.) Of course, even if CRA had a valid basis for such an objection, any argument that CRA might have raised that the 12 days it had to respond to the Subpoena was not reasonable was mooted by Office Depot's repeated extensions of the time to respond, most recently to March 4,

19

some 29 days after the Subpoena was served.  (Spahn, Decl. ¶ 23, Ex. V.)  CRA's baseless objection should be rejected as a result.

## CONCLUSION

For all of the reasons set forth above, this motion to compel discovery from CRA should be granted and CRA ordered to produce responsive documents and provide a knowledgeable person for deposition.

          OFFICE DEPOT, INC.

          By its attorneys,

          s/ Paula M. Bagger
          Paula M. Bagger (BBO No. 547703)
          COOKE CLANCY & GRUENTHAL LLP
          One Liberty Square
          Boston, MA  02109
          Phone:  (617) 428-6800
          Fax:  (617) 428-6868
          pbagger@ccg-law.com

          s/ Eric J. Wilson
          Eric J. Wilson (admission *pro hac vice* pending)
          Wisconsin Bar No. 1047241
          Brian C. Spahn (admission *pro hac vice* pending)
          Wisconsin Bar No. 1060080
          David R. Konkel (admission *pro hac vice* pending)
          Wisconsin Bar. No. 1097244
          780 North Water Street
          Milwaukee, WI 53202-3590
          Phone:  (414) 273-3500
          Fax:  (414) 273-5198
          EWilson@gklaw.com

Dated:  March 4, 2016

## CERTIFICATE OF SERVICE

I, Paula M. Bagger, hereby certify that on March 4, 2016 I caused the foregoing document to be served: electronically on all parties using the EM/ECF system, on CRA International, Inc., by hand delivery, and on all other parties not identified on the Notice of Electronic Filing by overnight delivery service.

          s/ Paula M. Bagger
          Paula M. Bagger