UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 16-mc-91068 |
| v. ) | |
| ) | UNITED STATES DISTRICT COURT |
| ) | DISTRICT OF COLUMBIA |
| STAPLES, INC. and OFFICE DEPOT, INC., ) | |
| ) | Case No. 15-cv-02115 |
| Defendants. ) | |

**NON-PARTY CRA INTERNATIONAL, INC.'S MEMORANDUM IN OPPOSITION TO OFFICE DEPOT, INC.'S MOTION TO COMPEL DISCOVERY**

The Court should deny the emergency motion of Office Depot, Inc. ("Office Depot") to compel discovery with respect to a third party subpoena (the "Subpoena") served on non-party CRA International, Inc. ("CRA") on February 4, 2016, in connection with a lawsuit (the "Action") brought by the Federal Trade Commission ("FTC") to enjoin the proposed merger between Office Depot and Staples, Inc. ("Staples"). Office Depot's motion to enforce the Subpoena is nothing more than a self-created emergency and an attempt to harass CRA, the FTC's expert in the Action, and should be denied because:

- Office Depot has violated the scheduling order entered in the Action by seeking discovery after the fact discovery deadline;

- Office Depot has known since 2015 that CRA was the FTC's expert, and could have sought discovery long before it actually served the Subpoena;

- The information sought from CRA is not even relevant to the Action, since CRA's annual purchases of consumable office supplies is far less than the large consumers identified by the FTC as the relevant market; and

- CRA informed Office Depot that it can obtain the same information sought in the Subpoena directly from Staples, Office Depot's co-defendant and merger partner.

Office Depot claims to need emergency determination of the Motion, pointing to a hearing next week on the FTC's request for an injunction. This purported emergency, however, is one of Office Depot's own making. Discovery in the Action commenced in late 2015, and Office Depot had ample time to serve a subpoena on CRA. It did not do so until the eleventh hour, on the eve of the close of fact discovery, and has only itself to blame for that delay.

Office Depot's delay means that the Subpoena is untimely, and the Court can readily dispose of the Motion for that reason alone. The Subpoena was returnable four days after the fact discovery deadline, which is four days too late. The scheduling order entered in the Action by the District Court makes abundantly clear that discovery was to be served sufficiently in advance so that any responses were due <u>prior to the fact discovery deadline</u>. This included third party discovery. Thus, the mere service of the Subpoena prior to the close of the discovery was insufficient under the plain language of the District Court's scheduling order, and Office Depot's failure to serve timely discovery is fatal to its efforts to enforce the Subpoena.

The lateness of the Subpoena exposes its true purpose – to harass the FTC's expert by seeking information immaterial to the Action. CRA is a consulting firm that has been engaged by the FTC to provide support and advice to the FTC's economic expert in the Action. The Subpoena requests CRA's purchasing and contracting information for office supplies dating back approximately four years. CRA is a mid-size consulting firm that spends less than $250,000 a year on consumable office supplies. In contrast, the focus of the FTC's lawsuit is the impact that the Office Depot-Staples merger would have on large "business-to-business" ("B-to-B") consumers, which are defined as those customers which buy at least $1 million annually of

consumable office supplies for their own end use. As such, it is apparent that Office Depot served and seeks to enforce the Subpoena not because CRA is a high-volume purchaser of office supplies, but rather because of CRA's role as a consulting expert to the FTC in the underlying litigation.

Moreover, there are alternative sources of the same information sought by Office Depot. Soon after CRA served its objections to the Subpoena it informed Office Depot that Office Depot could obtain the information on office supply purchases directly from Staples, from which CRA purchases the bulk of its office supplies. Yet, it appears that Office Depot has not sought this information from its co-defendant and merger partner, which only further reveals that the true purpose of the Subpoena has very little to do with the merits of the Action.

Finally, Office Depot has failed to meet the standards that would entitle it to an order compelling third party discovery from CRA: As noted above, the information requested has marginal relevance to the Action; regardless of relevance, there are alternative sources of the information sought by Office Depot; the requests are extremely broad in scope and time; and compliance with the Subpoena would impose an undue burden on CRA. For all of these reasons, Office Depot's untimely gambit should not be permitted and the Motion should be denied.

**Factual Background**

CRA is a consulting firm that offers strategic, economic and financial advice to law firms, corporations, accounting firms and governments. Declaration of Jonathan Yellin ("Yellin Decl.") at ¶ 2. It has approximately 540 employees in the United States, approximately 400 of whom provide consulting services, and a small financial administration/accounting staff of about 25 employees. *Id*.

CRA was engaged by the FTC in 2015 as a consulting expert to the FTC in connection with the FTC's review of the proposed merger between Staples and Office Depot.  *Id*. at ¶ 4.  CRA believes that Office Depot learned of the FTC's engagement of CRA no later than late summer 2015.  *Id*.

On December 7, 2015, the FTC commenced the Action in the United States District Court for the District of Columbia, filing a complaint and motions for a temporary restraining order and preliminary injunction against Office Depot and Staples.  The complaint alleges that the proposed merger would leave the combined entity as the only national vendor of consumable office supplies to large B-to-B consumers.  *See FTC v. Staples, Inc.*, No. 15-cv-02115, Dkt. No. 14-1 (Redacted Complaint) at ¶¶ 2-4, attached hereto as Ex. A.  The complaint defines the relevant product market as large B-to-B customers, which includes "those that buy at least $1 million annually of consumable office supplies for their own end-use."  *Id*. at ¶ 41.  CRA, on the other hand, purchased approximately $236,000 of office supplies in the United States in 2015 and $207,000 worth of office supplies in 2014, far below this threshold.  Yellin Decl. ¶ 3.

On December 23, 2015, the parties to the Action agreed to a Stipulation Regarding Case Management and Scheduling Order, which was entered by the D.C. District Court the next day (the "Scheduling Order").  Affidavit of Brian Spahn ("Spahn Aff.") at Ex. B.  The Scheduling Order provided for fact discovery to begin on December 23, 2015, a fact discovery deadline of February 12, 2016 (the "Fact Discovery Deadline"), and for expert discovery to close on March 15, 2016 (the "Expert Discovery Deadline").  *Id*. at 2-3.  The Scheduling Order makes clear that <u>all</u> fact discovery was to be <u>completed</u> by February 12, 2016: "All written and deposition discovery, *including discovery served on non-parties*, must be served in time *to permit completion of responses* by the close of fact discovery."  *Id.* (Emphasis added.)

On February 4, 2016, eight days prior to the Fact Discovery Deadline, Office Depot caused the Subpoena to be served on CRA. Spahn Aff. at Ex. D. The Subpoena provided CRA with 10 days from the date of service to respond, meaning that CRA's response was due on February 16, 2016 (February 14 was a Sunday and February 15 was a federal holiday). *Id*. at Ex. C. The Subpoena contained 15 document requests and sought all responsive documents from January 1, 2012 to the present. The requests were extremely broad and included, among other things: (1) "all documents related to the Company's purchases and efforts to purchase any Relevant Products in the Relevant Area"; (2) "all documents concerning the Company's plans, analyses, assessments, or summaries, relating to the Company's purchases or efforts to purchase any Relevant Product in the Relevant Area"; (3) "all documents of the Company, in its capacity as Relevant Customer,[1] relating to competition to provide any Relevant Product in the Relevant Area"; and (4) "all documents relating to every instance, from January 1, 2010 to the present, in which the Company has considered, evaluated, or selected any Person from whom the Company purchases or procures, has purchased or procured, or has considered purchasing or procuring any Relevant Product in the Relevant Area." *Id*.

CRA provided a timely objection to the Subpoena, serving its Rule 45 response and objections to the Subpoena by letter dated February 16, 2016 (the "Objection"). *See* Spahn Aff. at Exs. N and O; *see also* Fed. R. Civ. P. 45(d)(2)(B) (objections to third party subpoena "must be served by the earlier of the time specified for compliance or 14 days after the subpoena is served"). Among other grounds, CRA objected that the Subpoena was untimely, that it was

---

[1] The term "Relevant Customer" was not defined in the Subpoena. As explained below, CRA was not a relevant customer, since its purchases of consumable office supplies was far below the $1 million in annual purchases identified by the FTC as the relevant market.

5

overbroad, that it sought information more readily obtainable from the parties to the Action, and that it was unduly burdensome and oppressive.  Spahn Aff. at Ex. O.

Following the service of the Objection, CRA's General Counsel, Jonathan Yellin, had numerous communications with Office Depot's litigation counsel, Brian Spahn, regarding the Subpoena.  Yellin Decl. ¶¶ 6-7.  During those communications, Mr. Yellin informed Mr. Spahn that CRA has a limited financial administration/accounting staff, and that members of that team were busy dealing with other pressing matters, including the preparation of and assisting with CRA's 2015 fiscal year-end earnings process (the earnings call was held February 18, 2016), and other financial related matters, including the finalization of a $30 million self-tender offer (publicly announced on February 22, 2016) and the completion of its fiscal 2016 Form 10-K.  *Id*.  At the same time, Mr. Yellin also repeatedly made clear that CRA stood behind its objections and would not be producing documents.  *See*, *e.g.*, Spahn Aff. Ex. Q, email dated February 18, 2016 ("In terms of next steps, I just want to be clear that CRA has not agreed to provide anything as set forth in its objection.  As a courtesy, I will inquire of your issues, but that is with a full reservation of rights."); Ex. U, email dated February 23, 2016 ("Until our 10k is filed in the next week or so I cannot get input on your inquiries").[2]  Importantly, because CRA purchased the bulk of its office supplies through Staples, Mr. Yellin authorized Office Depot's attorney to contact Staples directly to determine CRA's spending on office supplies.  *Id*. at Ex. X, email dated February 26, 2016; Yellin Decl. ¶ 6.  On March 1, 2016, Mr. Yellin reported that CRA's 10-K still had not been filed.  Spahn Aff. at Ex. Y.  Office Depot filed this motion on March 4, 2016.  As noted in Mr. Yellin's Declaration, CRA filed its Form 10-K that same day.  Yellin Decl. ¶ 6.

---

[2] Office Depot immediately narrowed the excessively broad scope of the Subpoena in response to the Objection.  Nevertheless, CRA made clear throughout this time that there were a number of infirmities with the Subpoena, including its lack of timeliness and the ability of Office Depot to obtain the same information directly from Staples.

**Argument**

I.  **STANDARD OF REVIEW**

Fed. R. Civ. P. 45 provides explicit safeguards for non-parties that are dragged into civil litigation. *See Cont'l Datalabel, Inc. v. Avery Dennison Corp.*, 2010 U.S. Dist. LEXIS 68703, at *2-3 (D. Mass. June 15, 2010) (denying motion to enforce subpoena against non-party Staples, and noting that the plaintiff was "seeking to impress Staples into a battle to which it, as a non-party, is presumably indifferent"). In particular, Rule 45 expressly requires parties to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), and further "commands that a court 'shall' quash or modify a subpoena if the subpoena 'subjects a person to undue burden.'" *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). Courts in the First Circuit give "special consideration to [a subpoena recipient's] status as a non-party without any interest in the underlying dispute." *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 58 (1st Cir. 2014). Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). As explained below, for multiple reasons the Subpoena here imposes such an improper burden on CRA.

II.  **THE SUBPOENA IS UNTIMELY**

The Court need not even reach the issues of relevance and burden, however, because the Subpoena is untimely under the stipulated Scheduling Order entered in the Action. While Office Depot has rushed into Court blaming CRA for the delay and calling its motion an "emergency," any timing issues are solely Office Depot's responsibility.

Pursuant to the Scheduling Order, which was negotiated and agreed to by Office Depot, and signed by its counsel, fact discovery in the underlying litigation began on December 23,

7

2015 and was to end by February 12, 2016.  If, as Office Depot now contends, the discovery it seeks from CRA is so vital, it could have served the Subpoena earlier in the fact discovery period.  In fact, Office Depot managed to serve timely subpoenas on hundreds of other non-parties.  *See* Motion at 8.  Yet, by Office Depot's own admission, it was somehow unable to serve CRA until February 4, 2016 with a response date of February 16, 2016, after the Fact Discovery Deadline.

Office Depot contends in the Motion that the Subpoena is timely because it was *served* prior to the close of fact discovery.  This is directly contrary to the plain language of the Scheduling Order, which makes clear that service of a subpoena prior to the close of fact discovery is not sufficient.  Rather, under the order, "[a]ll written and deposition discovery, *including discovery served on non-parties*, must be served in time to permit *completion of responses* by the close of fact discovery."  Spahn Aff. Ex. B at 4, ¶ 4 (emphasis added).  Office Depot unsurprisingly makes no mention of this provision, which could not be clearer.  Thus, under the terms of the Scheduling Order, the Subpoena is late, and the Motion to enforce it should be denied.[3]  *See Strayhorn v. Caruso*, 2015 U.S. Dist. LEXIS 1009, at *3 (E.D. Mich. Jan. 6, 2015) (quashing a subpoena for which the response time fell outside the discovery deadline); *Sandifer v. Hoyt Archery, Inc.*, 2015 U.S. Dist. LEXIS 70341, *5-6 (M.D. La. June 1, 2015) (quashing subpoena that was served four days prior to close of discovery because the discovery

---

[3] The cases cited by Office Depot are readily distinguishable.  The court in *Liu v. Win Woo Trading, LLC*, 2016 U.S. Dist. LEXIS 20559 (N.D. Cal. Feb. 18, 2016), declined to quash a subpoena that required a response after the close of fact discovery, but there was no indication that the court's scheduling order specifically required discovery to be served sufficiently in advance so that responses were due prior to the fact discovery deadline as is the case here.  *See also Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18 (D.D.C. 2005) (same, but also stating that scheduling third-party depositions for two days after the close of discovery "without the presiding or magistrate judge's approval is improper").  Finally, *Bear Republic Brewing Co. v. Central City Brewing Co.*, 275 F.R.D. 43 (D. Mass. 2011) is irrelevant.  There, the court permitted service of a subpoena after the close of discovery because the plaintiff learned of the witness' role in the case only 10 days before the close of discovery.  Office Depot does not, and  cannot, make any such argument here.

"could not have been completed within the…discovery deadline"); *McAfee v. Boczar*, 2012 U.S. Dist. LEXIS 90216, *7 n.1 (E.D. Va. June 28, 2012) (denying motion to reconsider the grant of a motion to quash where "the time of service for the first subpoena failed to contemplate potential discovery disputes and provided insufficient time to allow the resolution of those discovery disputes and the completion of the requested discovery by the discovery cut-off date").

Office Depot accuses CRA of delaying its response to the Subpoena. Yet, CRA timely served an objection to the Subpoena, informed Office Depot that it was not going to produce documents, and has otherwise acted within its rights under the Federal Rules of Civil Procedure. In any event, CRA's response to the Subpoena has nothing to do with Office Depot's failure to timely serve it. Office Depot could have served a subpoena on CRA at any point after December 23, 2015, but chose to wait until the eve of the Fact Discovery Deadline.

**III.     THE SUBPOENA SEEKS IRRELEVANT INFORMATION AND IS HARASSING**

Even if the Subpoena was timely, it constitutes an improper end-run around well-established procedures to obtain expert discovery. The Court need to go no further than Office Depot's own motion papers to discern the true purpose of the Subpoena. The Motion describes CRA as "occup[ying] a unique position in the Underlying Litigation," and "being compensated substantially for its involvement in this case through its support of the FTC's economic expert." *See* Motion at 11, 14. Because of CRA's role, Office Depot contends, CRA is "unique" and Office Depot's discovery requests are "of particular importance." *Id*. at 15. To the contrary, given CRA's position in the litigation, Office Depot's discovery requests are particularly irrelevant, procedurally improper and harassing.

Office Depot admittedly seeks to use the fact discovery process to (belatedly) learn entirely irrelevant information from the FTC's expert. The FTC's complaint demonstrates that irrelevance. The complaint filed in the Action makes clear that the FTC's focus is on the effect

9

that the merger would have on large B-to-B customers, which it defines as companies which buy at least $1 million annually of consumable office supplies for their own end-use. *See* Ex. A at ¶ 41. CRA, a mid-size company of approximately 540 employees in the United States that purchases less than $250,000 of consumable office supplies annually in the United States, hardly fits this definition. Yellin Decl. at ¶ 3. It has not been named as a purchaser in the relevant product market. Moreover, while Office Depot touts the fact that large corporations have been forced to comply with similar subpoenas, Mem. at 8, this fact merely reinforces the improper nature of the Subpoena since those larger companies were presumably well over $1 million in annual purchases of consumable office supplies. *See* Spahn Aff. Ex. AA (order compelling Amazon to comply with subpoena). Notably, it appears that Office Depot has not sought similar discovery from its own expert witness, Compass Lexecon, a subsidiary of FTI, a $1.75 billion public company with over 4000 employees. This fact alone demonstrates the lack of "unique relevance" of the purchasing patterns of the expert witnesses, and is further evidence of the harassing nature of the Subpoena.

The fact that Office Depot served late in the litigation a subpoena on its adversary's expert, when that expert's purchases are well under the threshold identified as the critical market, merely demonstrates that the Subpoena was not served to assist Office Depot in rebutting the FTC's case, but for the purpose of harassing that expert or obtaining discovery outside the expert process. Using the fact discovery process to learn information about CRA's "unique position" in this litigation is not permissible, the discovery sought is not relevant to Office Depot's defenses, and the Motion should be denied.

## IV. THE SUBPOENA IMPOSES AN UNDUE BURDEN ON CRA

While the Motion should be denied based solely on Office Depot's thinly veiled attempt to obtain irrelevant discovery from the FTC's expert through a third party subpoena, or on its

10

untimeliness, the Subpoena is also objectionable because it imposes an undue burden on CRA. Courts in this District consider seven factors in weighing whether a subpoena imposes an undue burden. These factors include: (1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed; and (7) the expense and inconvenience to the non-party. *Rockstar Consortium US LP & Netstar Techs. LLC v. Google Inc.*, 2015 U.S. Dist. LEXIS 139770, *13 (D. Mass. Oct. 14, 2015).[4]

The first and second factors clearly favor CRA. As set forth above, the requested discovery is entirely irrelevant because CRA is a modest purchaser of office supplies that does not even come close to the $1 million threshold identified by the FTC as the relevant market at issue in the Action. Yellin Decl. ¶ 3.

Office Depot has also failed to establish a true need for the requested discovery. As it indeed recognizes, Office Depot has served "hundreds" of third party subpoenas "on a variety of entities," and the "vast majority of third parties have produced documents." Motion at 8. Accordingly, it has ample market data on which to base its asserted defenses. While Office Depot would have the Court believe that the information requested from CRA is critical to its defense, it is difficult to comprehend how the purchasing patterns of a single mid-sized company that coincidentally happens to be the FTC's expert would add to the wealth of market data that Office Depot obtained from all the other third parties.

---

[4] Under amended Rule 26(b), the scope of discovery is determined by reference to six factors. The factors considered by courts in this District in determining whether a subpoena imposes an undue burden are substantially similar to the Rule 26(b) factors. CRA thus addresses the seven "undue burden" factors here.

11

Nor does the fact that this is an antitrust case lend greater weight to the need for discovery from a single entity. While Office Depot seemingly contends that third-party discovery is of greater relevance in the antitrust context, Motion at 10, the First Circuit has previously rejected efforts to obtain burdensome discovery on a third party in an antitrust suit. *Cusumano*, 162 F.3d at 717 (affirming denial of motion to compel third party to comply with subpoena in antitrust litigation).

More importantly, the information Office Depot seeks is available from other sources. CRA primarily orders office supplies from Staples, through the staplesadvantage.com portal, and CRA has already authorized Office Depot to obtain the requested information directly from its merger partner and co-defendant Staples. Yellin Decl. ¶ 6; Spahn Aff. Ex. X. This information should be readily available to Staples. Moreover, even if episodic purchases by CRA outside of Staples were somehow critical to this case, Office Depot could look to the extensive discovery it obtained from other large suppliers of office products. *See* Spahn Aff. Ex. AA (order granting motion to compel Amazon to produce documents concerning its Amazon Business Unit, which sells office products, consumable office supplies and paper). These entities likely had to produce documents in this matter regardless of CRA's involvement and have a much more direct relationship to the issues in dispute. Seeking information from these sources would have been more efficient and avoided the undue burden and improper motives posed by the Subpoena.

The third and fourth factors – the breadth of the requests and time period covered – also counsel against enforcement of the Subpoena. It is unclear from the Motion whether Office Depot seeks to enforce the Subpoena in full or the narrowed version of the Subpoena that was conveyed by Mr. Spahn to Mr. Yellin. In either event, the document requests are extremely broad, even in their narrowed version, and purport to cover a four-year window of office supply

purchases, which would cause staff at CRA to have to search for records regarding the purchase of every pen or ream of paper used over the last four years, and seek confidential information concerning CRA's process for purchasing office supplies.

Finally, in light of the minimal, or non-existent, relevance of this information combined with the fact that the information sought is obtainable from a co-defendant in the Action, the burden, expense and inconvenience on CRA weighs against granting the Motion. The First Circuit has made clear that these factors warrant special consideration:

> Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concerns for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.

*Cusumano*, 162 F.3d at 717.

As CRA has informed counsel for Office Depot, CRA thinly staffs its administrative functions. Yellin Decl. ¶ 6. The individuals that would need to search for and review the requested materials have several other pressing responsibilities. *Id*. At the time the Subpoena was served, these responsibilities included preparing CRA's Form 10-K and assisting with CRA's earnings process and a tender offer. *Id*. While Office Depot seeks to portray CRA as a large national consulting behemoth, in fact, the company only has about 540 employees in the United States, approximately 400 of whom are consultants. *Id*. at ¶ 2. It would cause disruption to CRA's daily business operations to cause CRA's limited staff to search through four years of purchasing records regarding office supplies. *Id*. at ¶ 6.

As Office Depot should be well aware, a Court in this District previously denied a motion to enforce a third-party subpoena against its merger partner, Staples, under similar circumstances because the subpoena imposed an undue burden. *See Cont'l Datalabel*, 2010 U.S. Dist. LEXIS

68703 at *3.  There, two competing suppliers of computer printer parts were engaged in patent and unfair competition litigation.  *Id*. at *1.  Similar to Office Depot's Subpoena, the plaintiff sought information from Staples regarding its purchasing decisions.  *Id*. at *2.  Recognizing that, under First Circuit precedent, the burden placed on non-parties with "no dog in the fight" is a factor entitled to "special weight," the Court refused to enforce the subpoena beyond an already limited voluntary production by Staples.  *Id*. at *3-4 ("It bears mentioning that Continental is seeking to impress Staples into a battle to which it, as a non-party, is presumably indifferent").  The burden imposed on CRA here is even greater because the requested discovery is not even relevant to the claims and defenses at issue.

Finally, Office Depot criticizes CRA for allegedly being one of the few parties not to cooperate, but the other parties on which Office Depot served discovery are surely not in the same position as CRA.  In fact, permitting Office Depot to engage in this type of litigation tactic would also open the law firms that are representing Staples and Office Depot in the underlying litigation (including Weil, Gotshal & Manges LLP and Simpson Thatcher & Bartlett LLP) to similar third-party discovery.  CRA timely served its objections and made clear that it stood behind those objections and would not produce documents.  Under the applicable rules, it was under no obligation to do anything further.  *See* Fed. R. Civ. P. 45(d)(2)(B).

## V. CONCLUSION

For the reasons set forth herein, CRA respectfully requests that the Court deny Office Depot's Motion to Compel, award CRA its attorneys' fees and costs in opposition the Motion, and grant it such other and further relief as is just and proper.

March 11, 2016

Respectfully Submitted,

CRA INTERNATIONAL, INC.

By its attorneys,

/s/ Kenneth S. Leonetti
Kenneth S. Leonetti (BBO No. 629515)
ksl@foleyhoag.com
Michael J. Licker (BBO No. 678746)
mlicker@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
617-832-1000

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record for all parties via the Court's ECF filing system this 11th day of March, 2016.

/s/ Kenneth S. Leonetti
Kenneth S. Leonetti